JONES v. BURNHAM, WILLIAMS & CO. et al.

(Circuit Court of Appeals, Third Circuit. June 29, 1905.)

No. 27.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—PARTNERSHIP.

To sustain proceedings in involuntary bankruptcy against a person as a partner in a firm, a partnership in fact must be shown, and the burden of proof on the issue rests upon the petitioners.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 137.]

2. SAME.

Evidence considered, and *held* insufficient to establish the existence of a partnership between the defendants, in involuntary proceedings in bankruptcy, as alleged in the petition.

Appeal from the District Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 130 Fed. 475.

James Harold Warner, for appellant.

F. P. Prichard, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This is an appeal by Frank C. Jones from a judgment of the District Court for the Middle District of Pennsylvania adjudging the appellant a bankrupt in an involuntary proceeding in bankruptcy instituted by creditors of C. F. Beckwith & Co. against C. F. Beckwith and Frank C. Jones as alleged partners, trading as C. F. Beckwith & Co. To the creditors' petition Jones put in an answer under oath denying the alleged partnership. Whether, as charged in the creditors' petition, a partnership in fact existed between C. F. Beckwith and Frank C. Jones, trading as C. F. Beckwith & Co., was the fundamental and controlling issue, in the case as respects the appellant. Collier on Bankruptcy (4th Ed.) p. 61. And the burden of proof to show the alleged partnership was on the petitioners.

At the outset we note three important and undisputed facts: First, the alleged partnership was not evidenced by written articles; second, no express oral agreement of partnership was shown; third, there was no participation by Jones in the profits of the firm.

The firm of C. F. Beckwith & Co. was formed and began business in the year 1898. The ostensible partners composing the firm were C. F. Beckwith and A. L. Derry. The business was the buying and selling of mine machinery and supplies. The business was conducted at the city of Scranton, Pa., by C. F. Beckwith, who resided in that city. Jones lived in the city of New York. He was extensively interested in manufacturing industries, and was a man of wealth. There were intimate social relations between the Jones family and the Beckwith family. Mr. Jones formed the personal acquaintance of young C. F. Beckwith, who had then just left college by reason of an accident or ill health, through the latter's mother. Jones testifies, "His mother had spoken about him to me and his father." Thus commended to his friendly regard, Mr. Jones became very much interested in the young man, and soon began to render him financial aid in his business. Mr. Jones' uncontradicted account of how this came about is this:

"She [Beckwith's mother] spoke of his needing capital; that if he had some capital he could pay it off in a short time, and it would enable him to do a lucrative business, as he was well acquainted in Scranton and vicinity, and had many friends. I then either told him or wrote him (I forget which) that I would discount notes for him, which he could pay off gradually from his business. The result was that, as far as I recollect now, the first would be $500 or $1,000, and then it increased to $5,000 or $6,000 of notes from time to time he would send to me as he needed the money for paying for goods he had bought and had not collected from them, and I got them discounted in my banks in New York, and sent him the proceeds; and regularly as each note came due he would send me a new note or check, reducing the note a little, and for the interest on the new note, and I would send him the proceeds of the new note."

The learned judge below in his opinion said, "The relation between the two parties concerned as respondents·was in the beginning the outcome of social friendliness." This was certainly the case, and we discover nothing in the proofs to show that the relation between the two was ever other than the "outcome of social friendliness" during the whole time in which Jones was extending financial aid to Beckwith.

Besides his indorsements of C. F. Beckwith & Co.'s notes, Jones guarantied some accounts of the firm for purchases of goods. In every instance, however, his liability was incurred by some special contract—a guaranty or an indorsement—covering the particular transaction. The liabilities he thus incurred were indeed large in the aggregate, but his indorsements extended over several years, and included renewals. Young Mr. Beckwith was constant in his requests for such accommodations, and Jones responded generously. When asked why he thus assisted Beckwith, Jones answered, "Well, I assisted him on account of my friendship for his family," artlessly adding "as I have assisted a number of people in the same way."

The largest transaction with which Jones was connected by indorsement was a purchase of old rails, which Jones thus explained:

"A lot of secondhand rails were sold by the St. Louis & San Francisco Railroad, and Mr. Beckwith told me he had bought some, and had found a customer for most of them in a Mr. Devlin, and from time to time they were sold to Mr. Devlin; and, in order to finance that transaction, Mr. Beckwith asked me for larger indorsements, always holding out the idea that, when he received the full money from the rails, these notes would all be paid off, and also the other notes that I was carrying in New York, through the profits."

The examination of Mr. Jones as a witness was thorough. He denied positively that he was connected with Beckwith as a partner, or had any financial interest in the firm of C. F. Beckwith & Co. But he did not confine himself to a mere denial of partnership relations. His explanation of his dealings with Beckwith and said firm was circumstantial, straightforward, and full. He distinctly testified that all his guaranties and indorsements were entirely gratuitous, and out of friendship to Beckwith and his family. His version of the relation that existed between himself and C. F. Beckwith & Co. is consistent with all the circumstances of the case. For instance, what would be more natural than to furnish from time to time statements of the condition of the firm's business to one whose accommodation indorsements were constantly sought?

The principal witness for the petitioners was C. F. Beckwith. Upon his testimony, which, in so far as unfavorable to Jones, is contradicted by the latter, the case of the petitioners in the main depends. It is indeed said that Jones made an admission to Mr. Dolphin that "he was interested with Beckwith," and "also declared that he was a partner to Col. Sickles, of New York, and to Mr. Coffin." But all this rests exclusively upon the uncorroborated testimony of C. F. Beckwith. Mr. Dolphin did not testify at all; neither did Col. Sickles or Mr. Coffin. It is most significant that Beckwith did not testify to any express agreement of partnership. He did not state the terms of partnership. Upon the crucial question of fact he simply affirmed that Jones was a partner in C. F. Beckwith & Co. from the time that firm began operations. Counsel on behalf of the petitioners asked him, "Who were interested in the firm of C. F. Beckwith & Co. at the time, or who were partners?" to which he answered, "Mr. A. L. Derry, Scranton; Mr. Frank Cazenova Jones, of New York; and myself." The rest of his testimony consists of a recital of circumstances to justify his stated conclusion or inference (for it really amounted to no more) that Jones was a partner. Thus in his examination in chief this occurs:

"Q. Who furnished the backing or the money for the firm of C. F. Beckwith & Co.? A. Frank Cazenova Jones. Q. How was that money raised? A. On notes Mr. Jones indorsed."

Again, in his examination in chief we find the following:

"Q. What, if anything, did Jones say to you as to his backing of the firm, or his financial interest in the firm? A. Mr. Jones said to me any time we needed the money I could get it. Q. When referred to, what did he say as to his connection with the firm of C. F. Beckwith & Co.? A. I heard Mr. Jones say he was interested in me."

Beckwith, indeed, testified that he had introduced Jones as his partner to people, and named several persons, but not one of them was called to corroborate him.

The books of the firm presumably would show that Jones was a partner if such were the case. Yet the books were not produced, although undoubtedly in the hands or under the control of the petitioners. It may well be assumed that the books contain no evidence to corroborate the assertion of Beckwith that Jones was a partner.

The correspondence in evidence, we think, disproves the alleged partnership. The earliest letter was written by C. F. Beckwith to Mr. Jones soon after the firm of C. F. Beckwith & Company was formed and had begun business, and in the same year. As furnishing a key to the whole correspondence which followed, we quote this letter at length, and extracts from the statement inclosed therein.

"Scranton, Pa., November 16th, 1898.

"Mr. Frank C. Jones, President Manhattan Rubber Company, 18 Vesey Str., New York City—My Dear Mr. Jones: Enclosed you will find statement of my business to date (face of Ledger with Mdse. Int. added), and a few explanations below. Really this does not do us credit, since we are working very hard on two or three large orders, any one of which would materially alter the looks of our accounts. I have just closed a nice order for fire apparatus, but have to sell on sixty days.

"Your telegram came this morning. Indeed your prompt reply only emphasizes your goodness and places me farther away from the point where I might be able to thank in suitable terms.

"I am not going to attempt to thank you for the last favor—it is beyond me, but with my kindest regards, I am,          Most indebtedly yours,
    "[Signed]                                    C. F. Beckwith."

Does this letter indicate any partnership relation between the writer and the person addressed? Does it not rather express the natural sentiments of a beneficiary to his benefactor?

The inclosed statement referred to in and by this letter contains the following explanation:

"I do not know whether I have told you just how Mr. Derry stands. When I first took him in he had absolutely nothing, so I have had to pay some of his bills and advance him some money from time to time. At the same time he assumed half of the debt that I had contracted up to that time (about $400.00). To balance this indebtedness, outside of his expense account—traveling, etc., for me—he is going to give me his note with a first-class endorser."

And the inclosed statement concluded thus:

A. L. Derry.

| | | |
|---|---:|---:|
| September 1st, one-half net indebtedness | $197 | 47 |
| September withdrawals, less expenses | 30 | 45 |
| October withdrawals, less expenses | 63 | 59 |
| | $291 | 51 |

C. F. Beckwith.

| | | | | |
|---|---:|---:|---:|---:|
| September 1st, one-half indebtedness | $197 | 48 | | |
| September, investment | | | $100 | 00 |
| October, investment | | | 60 | 00 |
| By balance | | | 37 | 48 |
| | | | $197 48 | $197 48 |

This documentary evidence discredits the verbal statement Beckwith now· makes that Jones was a copartner with him and Derry, for his contemporaneous written statement shows that the firm was composed of Beckwith and Derry only, and that they were equal partners. Other proof shows that Beckwith and Derry were the ostensible partners. Thus Beckwith testifies:

"Q. At the time during which Derry was a partner, what was the form of the letter paper? A. 'C. F. Beckwith & Company'—'C. F. Beckwith' one corner, and 'A. L. Derry' in the other corner. Q. Did Mr. Jones' name appear in the paper? A. It did not."

As showing what the true relation between Jones and Beckwith was, we here quote from a letter which the latter wrote to the former:

"Scranton, Pa., April 9th, 1900.

"My Dear Mr. Jones: Yours of the 7th instant, together with the check for $656.96 received. Please accept my thanks. * * * You need never fear that I have failed to place you on the top round of faithful friendship, and I assure you that I will fully appreciate the fact that not one young man in a thousand has the advantage that I have in a good sound adviser back of him.

"I have had a hard pull in a field where competition is terrific and prices necessarily low, but I hope we shall be able to pull out ahead each month now.

"When I am able to cancel the financial indebtedness to you, I shall be the happiest boy in Penna.

"I will send you the $450.00 note for endorsement in a day or two. I meant to find out how much we can afford to reduce it, if any, before getting your endorsement. I would like to pay this note in full and then make another here at the Traders' Bank for enough to take one of or two or three New York notes off your hands.

"Please don't congratulate me for a while yet, for I would not want to have you recall any such communication later on. It is not necessary to praise me, as I know you are the best friend I have and I never forget this fact for one moment.

"With kindest regards and deep appreciation of your many kindnesses, I am yours sincerely and affectionately,
"[Signed]      Chas. F. Beckwith."

In a letter from Beckwith to Jones dated May 21, 1900, Beckwith. says:

"I saw Mr. Phillips to-night, and he said he would cover my check Wednesday, if I could get an endorser on note for a few days. I asked him if your endorsement would go, he said, sure. Now in order to cover the complete account, I enclose note for ten days for $2,500.00 for your signature. I feel that I can do this in the present emergency, since you have told me to go to you when in trouble. * * * Thanking you again with all my heart for your great kindness, I am, sincerely and devotedly yours."

In the spring of 1901 the correspondence related to the dissolution of the partnership between Beckwith and Derry. In a letter dated May 3, 1901, Jones wrote to Beckwith:

"I have read your letter very carefully, and the more I think the matter over and the more you write me, the more convinced I am that there is nothing left for you to do but to dissolve partnership with Derry, as it would never do for you to have as a partner a man with his record, as it would be sure to injure you in a business way, and would ruin your financial credit. * * * And in the meantime I would have my lines laid to get hold of Carter or some one else to take in with you, but I would not have any name on the paper except C. F. Beckwith & Co."

In a letter dated May 21, 1901, Beckwith wrote to Mr. Jones:

"Scranton, Pa. November 29th, 1901.

"My Dear Mr. Jones: I received yours of the 28th out here at the house last night, and have carefully noted all of your advice. In reply, let me say, my dear Mr. Jones, your advice is just as much appreciated and considered just as valuable by me as your financial help. I fully understand the spirit of your letter and thank you from the bottom of my heart for writing as you have. * * * Before closing this scribble, I want to say again that I can never tell you in adequate terms how much all you have done for me has been appreciated by me. I think I always take your letters in the spirit they are written, and I always keep letters like the one you sent me yesterday separately and re-read them often. Your sound advice I can always take, but some of the great favors you have extended to me have completely floored me, as I did not know there was any such friend as you have proved to be, except in story books of my boyhood days, at which I have turned up my nose for some time."

Notwithstanding an expression or two which read alone might seem to import that Mr. Jones had a pecuniary interest in the firm of C. F. Beckwith & Co., the correspondence as a whole negatives the alleged partnership, and convincingly sustains the testimony of Jones.

It only remains for us to notice the testimony of Mr. Merrill, who, as the representative of Dun's Commercial Agency, interviewed Mr. Jones in the month of June, 1901. Merrill states Jones "told me he was then and always had been a special partner of Mr. Beckwith in the firm of C. F. Beckwith & Co.; that he furnished him capital, and started him when he left college, and was backing him," etc. Jones denies that he told Merrill he was a special partner. Now, no one connected with this litigation pretends that Jones was a special partner. Such proof would defeat the creditors' petition. This proceeding is based on an alleged general partnership, and must be so based. Collier on Bankruptcy (4th Ed.) p. 61. Evidently Mr. Merrill is mistaken in his recollection of Jones' language, or he has given an erroneous interpretation to what Jones said about his furnishing capital to Beckwith and backing him.

Upon a consideration of the whole evidence, we are of opinion that the petitioning creditors failed to make out their case. The proofs, we think, did not warrant a judgment in their favor against Mr. Jones.

The judgment of the District Court adjudging the defendant Frank C. Jones a bankrupt is reversed, and the cause is remanded to that court, with direction to enter judgment in his favor, with costs.